ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA DE SUPERIOR DE SAN JUAN

| | |
|---|---|
| Gilberto Santana Sánchez, en representación del menor G.S.C. y en representación y para beneficio de uno o más obreros que se encuentren en circunstancias similares,<br><br>Querellantes<br><br>v.<br><br>Restaurants Operators, Inc.; Fulano de Tal, 1-100.<br><br>Querellados | QUERELLA NUM.:<br><br>SOBRE:<br><br>**SALARIO MINIMO**<br>Procedimiento Sumario bajo el amparo de la Ley Núm. 2 de 17 de octubre de 1961 (<u>32 L.P.R.A. sec. 3118</u> et seq.) |

## QUERELLA

**AL HONORABLE TRIBUNAL:**

**COMPARECE**, la parte querellante, Gilberto Santana Sánchez, en representación del menor G.S.C. y otros similarmente situados, representado por los abogados que suscriben y muy respetuosamente, EXPONE, ALEGA Y SOLICITA:

### NATURALEZA DE LA QUERELLA

1. Esta es una acción civil sobre pagos de salario mínimo, sentencia declaratoria y daños presentada por la parte querellante bajo las disposiciones de la Ley número 2 del 17 de octubre de 1961 y 29 U.S.C. § 201, et seq., según enmendada.

2. En 1938, el Congreso de los Estados Unidos aprobó la ley conocida como Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (en adelante, "FLSA"), como parte de un esfuerzo para la eliminación de salarios bajos, largas horas de trabajo y para darle a los trabajadores un salario que permitiera un estándar mínimo de vida. El propósito de la FLSA es,

1

pues, dar unas protecciones mínimas a los trabajadores para que cada obrero o empleado protegido por la ley tenga una paga justa por su trabajo.

3. La sección 206 de la FLSA requiere que los patronos compensen a sus empleados a razón de un salario mínimo, que hoy en día es $7.25. Véase 29 U.S.C. § 206(a). Sin embargo, cuando un empleado recibe propinas ("tips") en exceso de $30.00 al mes, la FSLA permite que el patrono pueda recibir lo que se conoce como un "tip credit" (crédito de propinas). El máximo "tip credit" autorizado es $5.12 por hora y permite que el patrono pueda utilizar las propinas que recibe el empleado para cumplir su obligación patronal de pagar al empleado un salario mínimo de $7.25. Véase 29 U.S.C. § 203(m). La utilización del "tip credit" resulta en un beneficio y ahorro sustancial para el patrono. Esto ya que el patrono no tiene que desembolsar en efectivo una compensación por hora de $7.25. El "tip credit" permite que el patrono pueda operar desembolsando y pagando a sus empleados un salario de sólo $2.13 por hora, más propinas recibidas.



4. La FLSA establece *dos* condiciones para que un patrono pueda utilizar la defensa afirmativa de "tip credit" para justificar haber pagado el

2

salario mínimo federal: (1) el patrono debe informarle al empleado que va a tomar el "tip credit" y (2) el patrono tiene que permitir que el empleado retenga todos las propinas recibidas, excepto aquellas propinas distribuidas en un pote de propinas administrado legalmente. Solamente si estas normas son acatadas estrictamente, el patrono puede reclamar el "tip credit" para cumplir con su obligación legal de pagar el salario mínimo. La consecuencia de no seguir estas normas es clara: si no hay cumplimiento, no hay "tip credit".

5. En este caso, el patrono tiene una política y práctica de pagar a los meseros, incluyendo al querellante, una cantidad por debajo de los dispuesto en la sección de la FSLA que regula el "tip credit". El patrono no ha obedecido la FLSA, ha violado la sección 203(m) y no tiene una defensa afirmativa debido a lo siguiente: (1) No informó adecuadamente a la parte querellante y otros meseros sobre el "tip credit" dispuesto en 29 U.S.C. § 203(m); (2) no permitió al empleado querellante y a otros meseros retener todas sus propinas;[1] (3) requirió al querellante y a otros meseros a contribuir a un pote ilegal de propinas; (4) requirió a la parte querellante y a otros meseros a incurrir en gastos de negocios.

6. Las prácticas ilegales en violación a la FSLA han resultado en la renuncia por parte del patrono al "tip credit". En consecuencia, el patrono es responsable frente al querellante y otros meseros por el salario mínimo completo ("full minimum wage") por cada hora trabajada y no prescrita, más todos los daños estatutarios provistos por la FSLA. *Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA).*[2]

---

[1] El término "propina" o "tip" utilizado en este escrito tiene el significado estatuido en 29 C.F.R. § 531.52
[2] Accesible a traves del sitio web del Departamento del Trabajo de los Estados Unidos. https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/whdfs15.pdf

3

7. Hay otros meseros que se encuentran en circunstancias similares al querellante. Es decir, hay otros empleados del patrono que también son victimas de la misma política y práctica para el pago de salarios a los meseros que trabajan para el querellado, Restaurants Operators, Inc. Muchos potenciales querellantes están en riesgo inminente de perder sus derechos por razón de prescripción. Es por ello que el querellante presenta esta acción como una colectiva o de clase según autorizado procesalmente por la Ley Núm. 2 de 17 de octubre de 1961, para lograr el recobro de derechos laborales. A su vez, el querellante busca remedios en ley al amparo de la sección 216(b) de la FLSA, que autoriza que este foro judicial estatal permita la acumulación de todos los meseros afectados que presten su consentimiento escrito para ser parte de este procedimiento civil. La citada sección 216(b) de la FLSA, 29 U.S.C. § 216(b), estatuye lo siguiente:

> (b)**Damages; right of action; attorney's fees and costs**; termination of right of action
>
> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the **amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages**. Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. **Any employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages**. An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in **any** Federal or **State court** of competent jurisdiction **by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become

4

> **such a party and such consent is filed in the court in which such action is brought**. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title in which (1) restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 206 or section 207 of this title by an employer liable therefor under the provisions of this subsection or (2) legal or equitable relief is sought as a result of alleged violations of section 215(a)(3) of this title.
> (negrillas añadidas)

## PARTES

8. El querellante de epígrafe, Gilberto Santana Sánchez es mayor de edad, casado, y vecino de Carolina, Puerto Rico, y es padre con patria potestad del joven Gabriel Santana Concepción (G.S.C). El "Employee Code" de G.S.C. asignado por el patrono querellado es: 32500106. G.S.C. trabaja como mesero para restaurante que ha negocios bajo el nombre comercial "Olive Garden". El restaurante Olive Garden está ubicado en Parque Escorial Shopping Village, Carolina, Puerto Rico y es operado por el patrono querellado. La comparecencia del señor Gilberto Santana Sánchez en representación de los intereses de su hijo menor de edad y otros meseros que se encuentran en una posición similar a la de su hijo debido a la práctica y política del patrono querellado. En cumplimiento con la normativa procesal aplicable, se informa que su dirección residencial y postal es: URB COUNTRY CLUB, TERCERA EXTENSIÓN, CALLE 219 HH-93, Carolina, Puerto Rico, 00982; su número de telefono es: (787) 639-7237; su número de fax es: no tiene. El querellante trabaja para el patrono querellado desde agosto de 2019 y no se ha separado de su empleo.

5

9. Conforme a la sección 216(b) de la FLSA, 29 U.S.C. § 216(b), se encuentran en una posición sustancialmente similar al querellante todos los meseros que trabajaron para el patrono querellado en Puerto Rico y que reciben una compensación directa en efectivo (direct cash wage) de $2.13 por hora. En adelante se hará referencia a estos terceros como los "Miembros Putativos de la Acción Colectiva". Se anticipa que estos otros meseros sean acumulados a este procedimiento civil mediante el mecanismo conocido como "opt-in" estatuido en la sección 216(b) de la FLSA sometiendo la correspondiente hoja de consentimiento para convertirse en una parte querellante. Véase 29 U.S.C. § 216(b). Serán Miembros de la Acción Colectiva todos los meseros que cumplimenten la hoja de consentimiento para unirse a esta acción. La parte querellante se propone presentar una moción para la notificación a los Miembros de la Acción Colectiva, como se hace rutinariamente en este tipo de casos.[3]

10. La parte Querellada, Restaurants Operators, Inc. (en adelante, "Restaurant Operators" o "Patrono") es una empresa comercial privada que hace negocios en el Estado Libre Asociado de Puerto Rico, con el Número de Registro 99594 en el Departamento de Estado, que se dedica a operar restaurantes. Sus oficinas centrales están ubicadas en el municipio de San Juan, Puerto Rico. Su dirección física es 1155 Ave. Ponce de Leon San Juan, PR 00936-6308. Su dirección postal es P.O. Box 366308 San Juan, PR 00936-6308. Su agente Residente y Presidente es: Jorge Colon Gerena. Su secretario y vice-presidente es: Carlos García Collazo. Su tesorero es: Jose Salvatella Serrano.

---

[3] Para una discusión del derecho aplicable para dar notificación a terceros afectados de manera supervisada por el tribunal, véase la siguiente referencia por su valor persuasivo: *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1048 (7th Cir. 2020) (citando a *Hoffmann-La Roche*, 493 U.S. at 169, 110 S.Ct. 482).

6

11. Los querellados FULANO DE TAL, 1 al 100, son personas naturales o jurídicas que son responsables por los actos y omisiones descrito en la querella que son "patronos" conforme a la legislación social federal y estatal. También son las personas a las que se hace referencia más abajo en la definición de "Enterprise" o que operan cualesquiera de los restaurantes mencionados más abajo.

## JURISDICCIÓN Y COMPENTENCIA

12. Se invoca la jurisdicción del tribunal conforme a la Ley número 2 del 17 de octubre de 1961, 32 L.P.R.A. secciones 3118 y siguientes. De esta acción ser removida al foro federal, se invoca jurisdicción sobre la materia al amparo de 28 U.S.C. sección 1331 y 29 U.S.C. sección 216(b), y competencia en el distrito de Puerto Rico ya que toda la conducta alegada tuvo lugar en Puerto Rico.

## ALEGACIONES DE HECHO

13. El menor G.C.S. comenzó a trabajar para Restaurant Operators como mesero para aproximadamente el 26 de agosto de 2019.

14. En todo momento relevante a este procedimiento civil, el patrono querellado ha sido un empleador o patrono ("employer") del menor G.S.C. y de los Miembros Putativos de la Acción Colectiva según la sección 3(d) de la FLSA, 29 U.S.C. sección 203(d).

15. En todo momento relevante a este procedimiento civil, el patrono querellado junto a otras personas ahora desconocidas ha sido una empresa ("enterprise") según la sección 3(r) de la FLSA, 29 U.S.C. sección 203(r). Esto ya que el patrono querellado, junto a otras personas naturales o jurídicas, ha mantenido una operación y control común o ha realizado actividades con un propósito común, a saber, la operación de los siguientes restaurantes:

7

a. LONGHORN BAYAMÓN. Plazoleta del Cantón Carr. #167 Int. PR-29. Hato Tejas. Bayamón, Puerto Rico 00958. (787) 778-0880.

b. LONGHORN ESCORIAL. Ave. 65 Infanteria Lote H.E. Plaza Parque Escorial. Carolina, PR 00929. (787) 750-5100.

c. LONGHORN SAN JUAN CONVENTION CENTER. Distrito Centro de Convenciones. San Juan, PR 00907. (787) 625-1609.

d. LONGHORN SAN PATRICIO GUAYNABO. Calle González Guisti, Lote 4 Esq. Ave. San Patricio, Puerto Rico 00969. (787) 707-1995.

e. LONGHORN GUANAJIBO MAYAGUEZ. Plaza Sultana Carr. #2 Km 158.3 Bo. Mayaguez, Puerto Rico 00680. (787) 833-2331.

f. LONGHORN BAIORA CAGUAS. Lote 3 Wal-Mart Retail Center Ave. Rafael Cordero Bo. Bairoa. Caguas, PR 00726. (787) 905-7055.

g. LONGHORN PONCE. Plaza del Carobi Mall, Local 230 Ponce, Puerto Rico 00717. (787) 709-4518. LONGHORN MANATI. Hotel Hyatt, Carr. #2, Int. PR-149, Manatí, PR 00674. (787) 921-7777.

h. OLIVE GARDEN SAN JUAN CONVENTION CENTER. Ave. Manuel Fernandez Juncos 600, San Juan, PR 00907. (787) 775-3779.

i. OLIVE GARDEN PARQUE ESCORIAL SHOPPING VILLAGE. Carr.3 KM 6.8 Bo. San Anton Carolina, PR 00985 (787) 710-2500.

j. OLIVE GARDEN BAYAMÓN. Bayamon West Main Avenue

8

Bayamon, PR 00961 (787) 395-7044.

k. OLIVE GARDEN BARCELONETA. 1 Premium Outlets Blvd, Barceloneta, 00617, Puerto Rico.

l. OLIVE GARDEN SAN PATRICIO. Av. González Giusti, Guaynabo, 00969, Puerto Rico.

m. OLIVE GARDEN PLAZA LAS AMERICAS. 525 Av. Franklin Delano Roosevelt, San Juan, 00918, Puerto Rico.

n. OLIVE GARDEN SANTA ISABEL. Santa Isabel, 00757, Puerto Rico (GPS Coordinates: 18.010040, -66.386166).

o. RED LOBSTER BAYAMON. PR-29, Bayamón, 00961, Puerto Rico (787)945-2736.

p. RED LOBSTER - Plaza Las Americas, 525 Av. Franklin Delano Roosevelt, San Juan, 00918, Puerto Rico, (787) 723-7110.

## CAUSA DE ACCIÓN I

16. En todo momento relevante a este procedimiento civil, el patrono querellado ha tenido actividades comerciales conforme a la sección 2(s)(1) de la FLSA, 29 U.S.C. sección 203(s)(1), ya que ha tenido empleados desempeñándose en el comercio o la producción de bienes para el comercio. En todo momento relevante a este procedimiento civil, el patrono ha tenido un volumen de negocios de no menos de $500,000 anualmente, luego de excluir impuestos. El patrono viene legalmente obligado a cumplir con las disposiciones de salario mínimo de la FLSA.

17. El querellante y los Miembros Putativos de la Acción Colectiva son y fueron obreros, empleados o "employees", según definido en la sección 3(e)(1) de la FLSA, 29 U.S.C. sección 203(e)(1) del patrono querellado que estuvieron envueltos en la producción o actividades comerciales de acuerdo a lo estatuido en 29 U.S.C. secciones 206 y 207. Como parte de

9

su empleo, el querellante y los Miembros Putativos de la Acción Colectiva han manejado bienes que fueron movidos en el comercio interestatal y han facilitado regularmente transacciones mediante tarjetas de crédito en el comercio interestatal.

18. Desde 26 de agosto de 2019 al presente, el patrono ha empleado al querellante como mesero en el restaurante Olive Garden ubicado en Escorial Shopping Village. En todo momento, el patrono ha pagado al querellante una compensación de $2.13 por hora más propinas.

19. El patrono ha empleado al querellante y a otros individuos (Miembros Putativos de la Acción Colectiva) y les ha pagado un salario de $2.13 por hora, antes de contabilizar las propinas recibidas.

20. Como parte del esquema para la compensación del querellante y los Miembros Putativos de la Acción Colectiva, el patrono paga al querellante y a los Miembros Putativos de la Acción Colectiva un sueldo de $2.13 por hora y opera como si tuviese derecho a un "credit tip" de $5.12 por hora para cumplir con su obligación de pagar un salario mínimo.

21. El patrono querellado no informó al querellante y a los Miembros Putativos de la Acción Colectiva sobre las disposiciones sobre el "tip credit", lo que viola la primera condición estatuida en 29 U.S.C. sección 203(m). Véase 29 C.F.R. sección 531.59(b). El patrono no se adhirió estrictamente a los requisitos de notificación, por lo que el patrono perdió su derecho a reclamar el "tip credit" y debe pagar a los querellantes el salario mínimo. Se alega afirmativamente que el patrono que era insuficiente legalmente que los meseros meramente tuvieran conocimiento de la forma en que se calculaban sus sueldos, y su actuación fue intencional.

22. Por otro lado, otra causa suficiente e independiente que justifica la pérdida del "tip credit" es que el querellante y los Miembros Putativos de la Acción Colectiva son obligados a compartir sus propinas con empleados que no acostumbran a recibir propinas de manera regular. Específicamente, el querellante y los Miembros Putativos de la Acción Colectiva son obligados a compartir propinas dejadas por los clientes con empleados cuyo trabajo es recoger los platos sucios de las mesas, clasificados por el patrono como "bussers". Sin embargo, estos empleados no acostumbran a recibir propinas de parte de los clientes-comensales de manera regular en Puerto Rico. Independientemente la clasificación o "job title" de "busser" que ha dado el patrono a estos empleados, en la realidad estos empleados clasificados como "bussers" (i) no tienen interacción con el cliente; (ii) el patrono prohíbe la interacción de estos con el cliente; (iii) no contribuyen al pote de propinas; (iv) no reciben $30 o más mensualmente en propinas; (v) sus tareas son análogas a las de un empleado de limpieza, ya sea de pisos, superficies o platos, y no a las de un obrero dedicado al servicio del cliente. La distribución de las propinas de manera ilegal resulta en que el patrono haya perdido su derecho al "tip credit" al violar la condición número dos estatuida en 29 U.S.C. sección 203(m), y por tanto el patrono ha violado las disposiciones de salario mínimo dispuestas en 29 U.S.C. sección 206. Por tanto, el patrono no puede utilizar el "tip credit" como una defensa afirmativa para justificar el pago del salario mínimo. Se alega afirmativamente que el patrono sabía que tenía una obligación de no obligar a los meseros a compartir propinas con empleados de mantenimiento de los restaurantes y quiso actuar contrario a derecho de manera intencional.

23. Además, el patrono le ha requerido al querellante y a los Miembros Putativos de la Acción Colectiva pagar por herramientas de trabajo ("tools of trade"), uniformes, mantenimiento de uniformes y gastos de negocio, tales como lápices, bolígrafos, marcadores, encendedores ("lighters"), pantalones negros marca Dickies®, medias negras altas, así como zapatos especializados. El patrono siempre requiere, sin excepción alguna, que el querellante y los Miembros Putativos de la Acción Colectiva se presenten al trabajo con el uniforme completamente planchado al punto que los meseros que incumplen con este requisito indispensable del patrono no pueden hacer su turno de trabajo por razón de "uniforme incompleto", según caracterizado por el patrono. Aunque la lavandería y planchado (laundry and ironing) es una condición para que los querellantes puedan reportarse a trabajar, el patrono no paga a los querellantes ninguna cantidad o estipendio por razón de la lavandería y planchado del uniforme. Cada uno de estos costos asociados a las mencionadas herramientas de trabajo, uniformes, mantenimiento de uniformes y gastos de negocio ha reducido el sueldo por hora de cada querellante por debajo del salario mínimo estatutario. La práctica del patrono de requerir al querellado y Miembros Putativos de la Acción Colectiva que incurran en estos gastos de negocio es contrario a la FLSA ya que constituye una retención de propinas y viola la condición número dos estatuida en 29 U.S.C. sección 203(m), por lo que el patrono debe a los querellantes la cantidad de $5.12 por hora, que es la diferencia entre el "cash wage" ($2.13) y el salario mínimo ($7.25), más un reembolso por los costos asociados a los uniformes y su mantenimiento, así como por las herramientas de trabajo. Se alega afirmativamente que el patrono sabía que tenía una obligación de pagar herramientas, uniformes y

12

gastos de mantenimiento de uniformes, pero no lo hizo de manera intencional.

24. El patrono tiene una práctica de cobrarle a los empleados que reciben propinas un cargo de 3% por todas las propinas dejadas por los clientes mediante tarjeta de crédito. Sin embargo, ese cargo de 3% excede el cargo que el patrono paga para convertir los pagos mediante tarjeta de crédito o débito a efectivo. Por tanto, el patrono no remitió al querellante y los Miembros Putativos de la Acción Colectiva la propina neta luego de convertir los pagos mediante tarjeta de crédito o débito a efectivo. La posición del Departamento del Trabajo federal, la cual merece deferencia administrativa, es:

> Credit Cards: Where tips are charged on a credit card and the employer must pay the credit card company a percentage on each sale, the employer may pay the employee the tip, less that percentage. For example, where a credit card company charges an employer 3 percent on all sales charged to its credit service, the employer may pay the tipped employee 97 percent of the tips without violating the FLSA. However, this charge on the tip may not reduce the employee's wage below the required minimum wage. The amount due the employee must be paid no later than the regular pay day and may not be held while the employer is awaiting reimbursement from the credit card company. https://www.dol.gov/agencies/whd/fact-sheets/15-flsa-tipped-employees

25. El patrón y práctica del patrono de cobrar a los meseros una tarifa fija de 3% de las propinas dejadas con tarjeta de crédito o débito --por ciento que representa más de lo que al patrono le cuesta convertir las propinas a efectivo-- resultó en un enriquecimiento sin justificación legal para el patrono y constituye una actuación contraria a la condición número dos estatuida en 29 U.S.C. sección 203(m), que dispone que el patrono no puede retener para sí las propinas de los empleados. Se alega afirmativamente que el patrono sabía que le costaba menos del 3% convertir las propinas en efectivo, y que dicha conducta fue intencional.

13

26. Las prácticas y políticas patronales aquí descritas en torno a la obligación de informar al empleado sobre las disposiciones federales, distribución del pote de propinas, herramientas de trabajo, uniformes, retención de propinas asociadas a las transacciones con tarjetas de débito y crédito son ilegales y han causado un daño al querellante y otros similarmente situados, pues han recibido una paga equivalente a menos del salario mínimo. Por eso, la notificación de esta acción debe ser enviada a:

> Todos los empleados y exempleados que por los pasados tres años han trabajado como meseros en los restaurantes operados por Restaurants Operators, Inc. haciendo negocios bajo los nombres comerciales Olive Garden, Longhorn Steakhouse y Red Lobster que recibieron una propina en algún momento en los pasados tres años.

## CAUSA DE ACCIÓN II

27. Como resultado de la pandemia COVID-19, y como condición para regresar al empleo, el patrono ha requerido al querellante y los Miembros Putativos de la Acción Colectiva que se hagan pruebas "moleculares" o "serológicas" de COVID-19. Sin embargo, el Departamento del Trabajo federal ha sostenido que los patronos no pueden requerir a los empleados hacerse pruebas serológicas, las cuales se utilizan para determinar si un empleado previamente estuvo infectado con el COVID-19, como condición para regresar al trabajo, según se transcribe a continuación:

> A.6. May an employer administer a COVID-19 test (a test to detect the presence of the COVID-19 virus) before permitting employees to enter the workplace? (4/23/20)
>
> The ADA requires that any mandatory medical test of employees be "job related and consistent with business necessity." Applying this standard to the current circumstances of the COVID-19 pandemic, employers may take steps to determine if employees entering the workplace have COVID-19 because an individual with the virus will pose a direct threat to the health of others.

14

> Therefore an employer may choose to administer COVID-19 testing to employees before they enter the workplace to determine if they have the virus.
>
> Consistent with the ADA standard, employers should ensure that the tests are accurate and reliable. For example, employers may review guidance from the U.S. Food and Drug Administration about what may or may not be considered safe and accurate testing, as well as guidance from CDC or other public health authorities, and check for updates. Employers may wish to consider the incidence of false-positives or false-negatives associated with a particular test. Finally, note that accurate testing only reveals if the virus is currently present; a negative test does not mean the employee will not acquire the virus later.
>
> Based on guidance from medical and public health authorities, employers should still require – to the greatest extent possible – that employees observe infection control practices (such as social distancing, regular handwashing, and other measures) in the workplace to prevent transmission of COVID-19.
>
> A.7. CDC said in its Interim Guidelines that antibody test results "should not be used to make decisions about returning persons to the workplace." In light of this CDC guidance, under the ADA may an employer require antibody testing before permitting employees to re-enter the workplace? (6/17/20)
>
> No. An antibody test constitutes a medical examination under the ADA. In light of CDC's Interim Guidelines that antibody test results "should not be used to make decisions about returning persons to the workplace," an antibody test at this time does not meet the ADA's "job related and consistent with business necessity" standard for medical examinations or inquiries for current employees. Therefore, requiring antibody testing before allowing employees to re-enter the workplace is not allowed under the ADA. Please note that an antibody test is different from a test to determine if someone has an active case of COVID-19 (i.e., a viral test). The EEOC has already stated that COVID-19 viral tests are permissible under the ADA.
>
> The EEOC will continue to closely monitor CDC's recommendations, and could update this discussion in response to changes in CDC's recommendations.
>
> Fuente: "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws Technical Assistance Questions and Answers - Updated on June 17, 2020" https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws

28. El patrono tiene una práctica de actuar de manera contraria a la posición

15

del Departamento del Trabajo de los Estados Unidos, citada en el párrafo anterior, al solicitar que los empleados se sometan a pruebas serológicas de COVID-19, las cuales tienen un costo menor que la molecular, sin un fin de negocios legítimo y/o para hacer "profiling" de los empleados por razón de haber tenido una condición. El patrono ha discriminado en la modalidad de "regarded as" por haber tratado de manera diferente y sin justa causa a base de una percepción o creencia de que el querellante ha padecido de COVID-19, una condición que incapacitante ya que limita la capacidad para respirar y otras actividades de su vida diaria. El requerimiento del patrono al querellante de someterse a una prueba serológica es contrario a la Ley Número 100 de 30 de junio de 1959, la Ley de Empleo de Personas con Impedimento, Ley Núm. 44 de 2 de julio de 1985 y la American With Disabilities Act.

29. El patrono ha requerido al querellante visitar y asumir los costos asociados a visitar un médico primario, obtener una orden médica de prueba de COVID-19, someterse a una prueba "molecular o serológica" y entregar los resultados. Es decir, el obrero que no pueda costear la prueba serológica no puede volver a trabajar. El patrono ha indicado que el querellante no recibirá compensación económica por el tiempo asociado a visitar medico, laboratorio clínico y entregar la documentación requerida por el patrono. El patrono ha indicado que el querellante no recibirá un reembolso por los honorarios del medico que debe ordenar la prueba o los costos del laboratorio clínico por hacerse una prueba molecular o serológica.

30. Por tratarse de una práctica ampliamente conocida del patrono, el querellado cree que el patrono ha recibido cientos de pruebas *serológicas* de parte de los empleados sin un fin de negocios legitimo.

16

31. El esquema patronal antes mencionado ha resultado en que el querellante ha sido tratado de manera desigual e ilegal a base de una percepción de que este tiene una condición médica, COVID-19, por lo que el querellante tiene derecho a una compensación bajo la Ley Número 100 de 30 de junio de 1959, la Ley de Empleo de Personas con Impedimento, Ley Núm. 44 de 2 de julio de 1985.

32. De igual forma, el querellante tiene derecho a que el tribunal resuelva, mediante sentencia declaratoria, que el patrono tiene que asumir los siguientes costos: (1) costo de visita médica; (2) costo de realizarse una prueba molecular; (3) tiempo razonable asociado a visitar el médico y realizarse la prueba molecular de COVID-19 en el laboratorio clínico, así como un patrono tiene que asumir los costos en casos de pruebas de dopaje. El querellante tiene recursos económicos limitados y no puede ni está dispuesto a asumir los costos de visita médica y laboratorios clínicos.

33. El querellante también solicita sentencia declaratoria a los efectos de que el patrono no puede requerirle al querellante y a otros empleados en posición similar que se sometan a prueba serológicas, y que los archivos médicos de pruebas serológicas sean destruidos por ser estos un "profiling" o carpeteo ilegal por razón de condición médica o percepción de tener o haber tenido una condición médica.

**POR TODO LO CUAL**, respetuosamente se solicita al Honorable Tribunal que declare HA LUGAR la presente Querella y por consiguiente se declare:

    a. Que el patrono no se adhirió estrictamente a los requisitos de notificación estatuidos en la sección 203(m) de la FLSA, por lo que el patrono perdió su derecho a reclamar el "tip credit" y debe

17

        pagar a los querellantes el salario mínimo. 29 U.S.C. sección 203(m); 29 C.F.R. sección 531.59(b).

b. Que el patrono estableció un sistema de pote de propinas ilegal, por lo que el patrono perdió su derecho a reclamar el "tip credit" y debe pagar a los querellantes el salario mínimo. 29 U.S.C. sección 203(m); 29 C.F.R. sección 531.59(b).

c. Que el patrono retuvo para sí propinas dejadas por clientes mediante tarjeta de crédito o débito, por lo que el patrono perdió su derecho a reclamar el "tip credit" y debe pagar a los querellantes el salario mínimo. 29 U.S.C. sección 203(m); 29 C.F.R. sección 531.59(b).

d. Que el patrono dejó de compensar por herramientas de trabajo, uniforme (incluyendo lavandería y planchado), por lo que el patrono perdió su derecho a reclamar el "tip credit" y debe pagar a los querellantes el salario mínimo. 29 U.S.C. sección 203(m); 29 C.F.R. sección 531.59(b).

e. Que el patrono violó la legislación social federal y estatal y discriminó contra el querellante cuando requirió al querellante someterse a una prueba serológica de COVID-19, de manera contraria a la posición del Departamento del Trabajo de los Estados Unidos y en violación a la Ley Número 100 de 30 de junio de 1959, la Ley de Empleo de Personas con Impedimento, Ley Núm. 44 de 2 de julio de 1985 y la American With Disabilities Act, por lo que el patrono debe pagar una compensación al querellante al amparo de la legislación estatal.

f. Que mediante sentencia declaratoria se resuelva la diferencia entre las partes en cuanto a quien debe asumir ciertos costos y que

18

en su consecuencia este tribunal aclare y disponga que el patrono tiene la obligación de asumir los costos asociados a (i) visitar un médico primario, (ii) obtener una orden médica de prueba de COVID-19, (iii) someterse a una prueba "molecular o serológica" y (iv) así como el tiempo asociado, incluyendo el tiempo invertido en entregar los resultados al patrono.

g. Que mediante sentencia declaratoria se establezca que el patrono no puede requerirle al querellante y a otros empleados en posición similar que se sometan a prueba serológicas, y que los archivos médicos de pruebas serológicas sean destruidos por ser estos un "profiling" o carpeteo ilegal por razón de condición médica o percepción de tener o haber tenido una condición médica.

**RESPETUOSAMENTE SOMETIDO.**

En San Juan, Puerto Rico, a 25 de junio de 2020.

| | |
|---|---|
| F/Zuleika Castro De Jesus<br>Lic. Zuleika Castro De Jesus<br>RUA 21258<br>1969 S. Alafaya Trail #379<br>Orlando, FL 32828-8732<br>zcastro@djesuslaw.com<br>Teléfono: (407) 267-7130<br>Fax: N/A | F/José Carlos Vélez Colón<br>Lic. José C. Vélez Colon<br>RUA 18913<br>421 Ave Muñoz Rivera<br>Piso 10<br>jvelez@velezlawgroup.com<br>Teléfono: (787) 599-9003<br>Fax: N/A |

**EXCENTO DE ARANCELES**
**RECLAMACIÓN DE**
**SALARIOS**
**PROCEDIMIENTO SUMARIO**
**(LEY NÚM. 2)**